**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **JOE M. LIENEMANN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No. 08-2484** |
| ) | |
| **GLOCK, INC., GARY FLETCHER,** ) | |
| **and JOSH DORSEY,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM AND ORDER**

Plaintiff Joe M. Lienemann filed a four-count complaint against his former employer Defendant Glock, Inc. and two of its Vice Presidents, Defendants Gary Fletcher and Josh Dorsey. The case is now before the court on motions to dismiss filed by Glock, Inc. (Doc. 5) and by Mr. Fletcher and Mr. Dorsey (Doc. 7). For the reasons set forth below, these motions are both granted.

**BACKGROUND**

Plaintiff Joe M. Lienemann, a Kansas resident, was hired by Glock, Inc. as a district manager in 1998; he was promoted to regional manager in 2006. Vice Presidents Fletcher and Dorsey both live in Georgia, where Glock is located.

According to the Complaint, in January 2008, Mr. Lienemann was contacted by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (BATFE) concerning an anonymous telephone inquiry into one of his firearms sales. Mr. Lienemann complied with BATFE's request to turn over his records for review, but he heard nothing further from them.

Five days after the BATFE inquiry, Mr. Fletcher called Mr. Lienemann and asked if there was anything to report in his region. Mr. Lienemann, believing Mr. Fletcher was asking about business activities, said no. Mr. Fletcher then asked about the BATFE investigation. Mr. Lienemann described the inquiry he had received from BATFE and explained that he had provided records but was not under investigation. Mr. Fletcher then terminated Mr. Lienemann.

Mr. Lienemann alleges that Glock reported to the Kansas Department of Labor that he was terminated for misconduct and dishonesty. Additionally, according to the Complaint, Mr. Fletcher held a teleconference to tell all central region district managers, regional managers, and sales directors that Mr. Lienemann "was under investigation by BATFE for the illegal transfer of handguns and the making and selling of machine guns, that he would be convicted of these crimes and be sentenced and serve time in a Federal penitentiary." Additionally, a couple of weeks later, Mr. Dorsey shared the same information with numerous firearms industry people while in Las Vegas, Nevada. Count I of the Complaint sets out a claim for defamation, based on these statements.

After his termination, Mr. Lienemann applied for unemployment benefits from the Kansas Department of Labor, and his request was granted. Glock appealed that decision, but according to the Complaint, it refused to provide evidence to substantiate its claim that Mr. Lienemann was terminated for misconduct and dishonesty. Mr. Lienemann also alleges that Glock refused to have Mr. Fletcher and Mr. Dorsey available to testify at the unemployment hearing. Count II of Mr. Lienemann's Complaint asserts that Glock's appeal of his unemployment benefits constituted malicious prosecution because it "was done without probable cause, and with malice and an intent to injure and damage plaintiff."

According to Count III of the Complaint, Mr. Lienemann had accrued 126.50 hours of personal time off (PTO) for 2007, which had a value of $5,089.05. Pursuant to Glock's policy, Mr. Lienemann had placed a merchandise order to use his accrued PTO. When Glock terminated Mr. Lienemann, it canceled this order and has refused to compensate him for his PTO. Count III seeks compensation for Mr. Lienemann's accrued PTO.

Count IV of the Complaint seeks punitive damages, alleging that Defendants acted with malice and an intent to injure plaintiff.

**DISCUSSION**

All three defendants have filed motions to dismiss. Glock's motion seeks dismissal of Count II for failure to state a claim. Mr. Fletcher and Mr. Dorsey's joint motion requests dismissal for lack of personal jurisdiction.

## I.   Glock's Motion to Dismiss Count II

The court will dismiss a cause of action for failure to state a claim only when the factual allegations fail to "state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *Bell Atl.*, 127 S. Ct. at 1964-65. The court accepts the facts alleged in the complaint as true, even if doubtful in fact, *id.* at 1965, and views all reasonable inferences from those facts in favor of the plaintiff, *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl.*, 127 S. Ct. at 1965 (citations omitted). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

As noted, Count II of the Complaint alleges that Glock appealed the Kansas Department of Labor's decision to award unemployment benefits "without probable

cause, and with malice and an intent to injure and damage plaintiff." Mr. Lienemann asserts that he incurred attorney's fees and expenses as a result of this "malicious prosecution."

The Kansas Supreme Court has refused to recognize this cause of action: "No Kansas court has ever held that a malicious prosecution action lies against a party who defends against or appeals a claim initiated by a plaintiff and, in fact, early Kansas precedent is against this cause of action." *Wilkinson v. Shoney's Inc.*, 4 P.3d 1149, 1157 (Kan. 2000) (citing *Baxter v. Brown*, 111 P. 430 (Kan. 1910)). In analyzing a plaintiff's claim that his employer improperly objected to his unemployment benefits, the Court noted that malicious prosecution requires that the challenged proceedings be *initiated* by the defendant. *Wilkinson*, 4 P.3d at 1159. Thus, "a purely defensive action provides an insufficient basis for liability." *Id.* Additionally, the Kansas Supreme Court expressly rejected creating a new cause of action for "malicious defense" in situations like this:

> We are not prepared to adopt or recognize a new cause of action for malicious defense. If such is deemed desirable or needed, action by the legislature is required. This is especially true in light of our long-standing recognition of the law to the contrary.

*Wilkinson*, 4 P.3d at 1159.

Mr. Lienemann does not dispute that *Wilkinson* applies to his claim. Instead, he expresses his disagreement with the decision itself, arguing that the rationale is "significantly flawed." Additionally, Mr. Lienemann notes a Connecticut Supreme Court decision that allowed an employee to raise a malicious defense claim for an

employer's frivolous appeal of unemployment benefits. *See, e.g.*, *Label Sys. Corp. v. Aghamohammadi*, 852 A.2d 703 (Conn. 2004).

As a federal court sitting in diversity, this court's responsibility is to apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Here, therefore, this court must accept a decision of the Kansas Supreme Court as the definitive statement of Kansas law "unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted." *Salt Lake Tribune Publ'g Co., LLC v. Mgmt. Planning, Inc.*, 454 F.3d 1128, 1134 (10th Cir. 2006).

Other than his personal disagreement with the *Wilkinson* decision, Mr. Lienemann offers no reason why this court should not accept *Wilkinson* as the binding Kansas law on this issue. Thus, Count II of his Complaint, labeled as "malicious prosecution," but more appropriately characterized as "malicious defense," cannot stand. Glock's motion to dismiss this count is granted.

### II.    Mr. Fletcher and Mr. Dorsey's Joint Motion to Dismiss for Lack of Personal Jurisdiction

Although plaintiff bears the burden of establishing personal jurisdiction over defendant, *see OMI Holdings, Inc. v. Royal Ins. Co.,* 149 F.3d 1086, 1091 (10th Cir. 1998), in the preliminary stages of litigation this burden is "light," *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc*., 205 F.3d 1244, 1247 (10th Cir. 2000). Where, as here, there has been no evidentiary hearing, and the motion to dismiss for lack of personal

jurisdiction "is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *See id.* The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. *Id.* Moreover, if the parties present conflicting affidavits, "all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* Only the well pled facts of plaintiff's complaint, however, as distinguished from mere conclusory allegations, must be accepted as true. *Id.*

### A.    Personal Jurisdiction Standard

To obtain personal jurisdiction over a nonresident defendant in a diversity action, "a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process." *Intercon*, 205 F.3d at 1247. Because Kansas's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Kansas law collapses into the single due process inquiry that includes both a requirement of minimum contacts and an analysis of fair play and substantial justice. *See OMI Holdings*, 149 F.3d at 1090.

### B.    Minimum Contacts

The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant so long as the defendant purposefully established "minimum

7

contacts" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *accord Intercon*, 205 F.3d at 1247 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). In the context of tort claims, "the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995). Instead, to exercise specific jurisdiction[1] over a defendant, the court must conduct a particularized inquiry into whether the defendant has "purposefully directed his activities at residents of the forum, and [whether] the litigation results from alleged injuries that arise out of or relate to those activities." *Intercon*, 205 F.3d at 1247 (quoting *Burger King Corp.*, 471 U.S. at 472); *accord Doering v. Copper Mountain, Inc.*, 259 F.3d 1202, 1210 (10th Cir. 2001).

The purposeful direction requirement is designed to protect an out-of-state defendant from being brought into court for merely "random, fortuitous, or attenuated

---

[1] A court may exercise general jurisdiction if the defendant's contacts with the forum state, while unrelated to the alleged activities upon which the claims are based, are nonetheless "continuous and systematic." *Intercon*, 205 F.3d at 1247 ("When a plaintiff's cause of action does not arise directly from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state."); *accord Doering*, 259 F.3d at 1210. Mr. Lienemann does not allege that Mr. Fletcher and Mr. Dorsey are subject to the general jurisdiction of this court, and so the analysis will focus only on the requirements for specific jurisdiction.

8

contacts" with the forum state. *Burger King*, 471 U.S. at 475. In the context of tort claims, purposeful direction may exist when defendant engaged in "(a) an intentional action . . . (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008) (interpreting *Calder v. Jones*, 465 U.S. 783 (1984)).

Mr. Lienemann alleges that Mr. Fletcher and Mr. Dorsey intentionally made false and defamatory statements. This allegation, accepted as true at this stage in the litigation, *Intercon*, 205 F.3d at 1247, is sufficient to satisfy the first requirement of an intentional act by defendants.

The second step in the purposeful direction analysis requires that the alleged tortious conduct be "expressly aimed at the forum state." *Dudnikov*, 514 F.3d at 1072. Although this notion overlaps with the third element—that Defendants knew harm would be suffered in the forum state—"the overlap is far from complete." *Id.* at 1074-75. This second step of the analysis focuses on "a defendant's intentions–where was the 'focal point' of its purposive efforts." *Id.* at 1075; *see also Far West*, 46 F.3d at 1080.

Some courts adopt a broad interpretation of this element, finding it satisfied where the defendant "individually target[s] a known forum resident." *Bancroft & Masters, Inc. v. August Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). The Tenth Circuit, however, has taken a more restrictive approach, "holding that the forum state itself must be the

9

'focal point of the tort.'" *Dudnikov*, 514 F.3d at 1075 n.9 (quoting *Far West*, 46 F.3d at 1080).

Mr. Lienemann asserts only that "the statements by defendants concerned the activities of plaintiff in Kansas. The statements effected [*sic*] his professional reputation and career in Kansas." He offers no other suggestion or allegation that Mr. Fletcher's or Mr. Dorsey's statements had any other contact with Kansas. It is unclear even whether any person in Kansas heard the allegedly defamatory statements. Mr. Fletcher's statements were made to Glock employees in the central region, which perhaps included some Kansas employees, though Mr. Lienemann does not make that assertion. And Mr. Dorsey's statements were made in Nevada to "individuals within the firearms industry."

As this court has previously noted,

> [i]t is not enough that injury in the forum state is foreseeable merely because a plaintiff lives there and has some relationships there. *Dudnikov*, 514 F.3d at 1077. Instead plaintiffs must establish 'not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook *intentional actions that were expressly aimed at that forum state*.' *Id.*

*Jayhawk Capital Management, LLC v. Primarius Capital LLC*, No. 08-2202, 2008 WL 4305382, at *5 (D. Kan. Sept. 18, 2008) (emphasis in original).

Mr. Lienemann argues only that personal jurisdiction is appropriate because Mr. Fletcher and Mr. Dorsey injured him, a Kansas resident. That is insufficient to establish that they targeted the state with their allegedly tortious statements. *Far West*, 46 F.3d at 1079. Accordingly, their motion to dismiss is granted.

**IT IS THEREFORE ORDERED BY THE COURT** that Glock, Inc.'s motion to dismiss (Doc. 5) is granted. Count II of the Complaint is dismissed.

**IT IS FURTHER ORDERED BY THE COURT** that Mr. Fletcher and Mr. Dorsey's joint motion to dismiss (Doc. 7) is granted. Defendants Gary Fletcher and Josh Dorsey are dismissed from this action.

**IT IS SO ORDERED** this 12th day of January, 2009.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
