**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

|  |  |  |
|---|---|---|
| **JOE M. LIENEMANN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 08-2484** |
| | ) | |
| **GLOCK, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Joe M. Lienemann filed a four-count complaint against his former employer Defendant Glock, Inc. and two of its Vice Presidents, Gary Fletcher and Josh Dorsey. The court dismissed Mr. Fletcher and Mr. Dorsey, and also dismissed one of Mr. Lienemann's four counts against Glock. Mr. Lienemann has now filed a Motion to Dismiss (Doc. 42), seeking to dismiss without prejudice the remainder of this action pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. Glock opposes that motion. For the reasons discussed below, Mr. Lienemann's motion is granted with certain specified conditions.

**1.     Background**

According to the Complaint, in January 2008, Mr. Lienemann was contacted by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (BATFE) concerning an anonymous telephone inquiry into one of his firearms sales. Mr. Lienemann complied

with BATFE's request to turn over his records for review, but he heard nothing further from them.

Five days after the BATFE inquiry, Mr. Fletcher called Mr. Lienemann and asked if there was anything to report in his region. Mr. Lienemann, believing Mr. Fletcher was asking about business activities, said no. Mr. Fletcher then asked about the BATFE investigation. Mr. Lienemann described the inquiry he had received from BATFE and explained that he had provided records but was not under investigation. Mr. Fletcher then terminated Mr. Lienemann.

Mr. Lienemann alleges that Glock reported to the Kansas Department of Labor that he was terminated for misconduct and dishonesty. Additionally, according to the Complaint, Mr. Fletcher held a teleconference to tell all central region district managers, regional managers, and sales directors that Mr. Lienemann "was under investigation by BATFE for the illegal transfer of handguns and the making and selling of machine guns, that he would be convicted of these crimes and be sentenced and serve time in a Federal penitentiary." Additionally, a couple of weeks later, Mr. Dorsey shared the same information with numerous firearms industry people while in Las Vegas, Nevada. Count I of the Complaint set out a claim for defamation based on these statements, but only the defamation claim against Glock remains. Mr. Fletcher and Mr. Dorsey were dismissed for lack of subject matter jurisdiction.

Count II, a claim of "malicious prosecution," was dismissed.

According to Count III of the Complaint, Mr. Lienemann had accrued 126.50

hours of personal time off (PTO) for 2007, which had a value of $5,089.05. Pursuant to Glock's policy, Mr. Lienemann had placed a merchandise order to use his accrued PTO. When Glock terminated Mr. Lienemann, it canceled this order and has refused to compensate him for his PTO. Count III seeks compensation for Mr. Lienemann's accrued PTO.

Count IV of the Complaint seeks punitive damages, alleging that Glock acted with malice and an intent to injure plaintiff.

Mr. Lienemann wishes to dismiss this case without prejudice pursuant to Rule 41(a)(2).

## 2. Rule 41(a)(2)

"Federal Rule of Civil Procedure 41(a)(2) permits a district court to dismiss an action without prejudice 'upon such terms and conditions as the court deems proper.'" *Am. Nat'l Bank & Trust Co. v. Bic Corp.*, 931 F.2d 1411, 1412 (10th Cir. 1991) (quoting rule). "The rule is designed primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 357 (10th Cir. 1996) (quotation omitted). The district court has discretion over these matters, but "[a]bsent 'legal prejudice' to the defendant, the district court normally should grant such a dismissal." *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997); *see also Brown v. Baeke*, 413 F.3d 1121, 1123 (10th Cir. 2005).

"Prejudice does not arise simply because a second action has been or may be filed

against the defendant, *Am. Nat'l Bank & Trust Co.*, 931 F.2d at 1412, which is often the whole point in dismissing a case without prejudice." *Brown*, 413 F.3d at 1124. Rather, prejudice is a function of other, practical factors including: "the opposing party's effort and expense in preparing for trial; excessive delay and lack of diligence on the part of the movant; insufficient explanation of the need for a dismissal; and the present stage of litigation." *Id.* (citing *Ohlander*, 114 F.3d at 1537). "These factors are neither exhaustive nor conclusive; the court should be sensitive to other considerations unique to the circumstances of each case." *Brown*, 413 F.3d at 1124. "In reaching its conclusion, the district court should endeavor to insure substantial justice is accorded to both parties, and therefore the court must consider the equities not only facing the defendant, but also those facing the plaintiff." *County of Santa Fe v. Public Serv. Co.*, 311 F.3d 1031, 1048 (10th Cir. 2002) (quotation omitted).

**3.     Discussion**

Mr. Lienemann has invoked Rule 41(a)(2) to dismiss this case without prejudice and refile it in state court. He asserts that he has discovered another individual who made defamatory statements leading to his termination and loss of reputation. His state court complaint names as defendants this other individual as well as that individual's company, both of whom are Kansas citizens like Mr. Lienemann himself, which would destroy diversity if Mr. Lienemann were to attempt to add them to this litigation. Thus, Mr. Lienemann requests dismissal so that all parties who have allegedly defamed him (including Glock) could be tried in one case so as to prevent the possibility of

4

inconsistent verdicts.

Glock objects to Mr. Lienemann's motion, claiming that dismissing the case now will result in prejudice to it. Applying the above factors and taking into account the court's ability to impose curative conditions on the parties, the court finds that the defendant will not suffer legal prejudice if this case is dismissed without prejudice.

First, as to Glock's effort and expense in preparing for trial, Glock identifies all of the documents created and expenses incurred thus far in this case—responsive pleadings, motions to dismiss, a settlement proposal and a mediation conference, discovery responses, and preparation for future depositions and a summary judgment motion.

Although some of Glock's time and expense defending this action is not relevant to the state court proceedings, much of it could likely be modified or adapted for use in that case. Additionally, Mr. Lienemann agrees that all discovery conducted in this case is applicable to the state court matter. In addition to requiring a plaintiff to permit a defendant to use discovery in a subsequent case, *see, e.g., Jenkins v. Unified School District No. 501*, 175 F.R.D. 582, 584 (D. Kan. 1997), typically a court imposes as a condition of dismissal without prejudice that the plaintiff pay the defendant's expenses incurred in defending the lawsuit, which usually include a reasonable attorney's fee. *United States v. Rockwell Int'l Corp.*, 265 F.3d 1157, 1179 (10th Cir. 2001); *see also Cauley v. Wilson*, 754 F.2d 769, 771-72 (7th Cir. 1985) (holding that "a district court may seek to reimburse the defendant for his attorneys' fees because he [or she] faces a

5

risk that the plaintiff will refile the suit and impose duplicative expenses upon him."). In doing so, Glock can be reimbursed for costs imposed by Mr. Lienemann's voluntary dismissal and subsequent refiling.

Second, Glock laments the excessive delay in this case, arguing that Mr. Lienemann filed his state court complaint against the other defendants back in January, but did not file his motion to dismiss this case until April.  In response Mr. Lienemann explains that his state court complaint against the other defendants was "forced to some degree" because of concern over the statute of limitations.  Moreover, he explains, he continued to investigate the claim before having service of process issued to defendants, and that he filed this motion to dismiss at the same time service was issued in the state court case.  Thus, the court finds that Mr. Lienemann has not caused excessive delay.

Third, Glock rejects Mr. Lienemann's contention that two separate cases could result in inconsistent verdicts, explaining that each claim of defamation requires specific proof about who said what to whom and how that damaged someone's reputation.  Thus, Glock argues, even if the two cases proceed separately, Mr. Lienemann would still need to bring forth specific evidence to get a verdict against either defendant.

Given this early stage in the litigation, however, it is not appropriate to guess what the evidence will or will not establish.  And Mr. Lienemann has suggested some connection between Glock and the new defendants, which means that evidence may overlap and that each defendant could lay blame on the other for Mr. Lienemann's damaged reputation.  That could, at least in theory, result in inconsistent verdicts.  Mr.

6

Lienemann's concern is justified, and the potential lack of diversity when joining all defendants is a valid consideration for a motion to dismiss. *McCoy v. Whirlpool Corp.*, 204 F.R.D. 471, 474 (D. Kan. 2001).

Finally, considering the present stage of the litigation, the court notes that so far only written discovery has been exchanged. No depositions have yet been taken. Significantly, this is not a situation where either the pretrial conference has been held and the case is on the verge of trial, or where the plaintiff is seeking to dismiss the case because the defendants have filed a summary judgment motion. *See, e.g., Phillips U.S.A., Inc.*, 77 F.3d at 358 (affirming the district court's denial of the plaintiff's motion to dismiss because a party should not be able to avoid an adverse ruling on a dispositive motion by dismissing the case).

Glock also requests the court consider imposing certain conditions on the dismissal, including that Mr. Lienemann not name former defendants Fletcher or Dorsey in any future action; that he propound no more than twelve interrogatories to Glock; and that all discovery conducted in this case be applicable to the subsequent case. Mr. Lienemann agreed to all of those conditions. Additionally, as noted earlier, courts typically impose a condition requiring plaintiffs to pay for duplicative expenses upon refiling.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff's motion to dismiss without prejudice (Doc. 42) is granted subject to the following conditions:

7

(1) The plaintiff will not name Gary Fletcher or Josh Dorsey in the subsequent litigation.

(2) The plaintiff will propound no more than twelve interrogatories on defendant in the subsequent litigation.

(3) The plaintiff shall consent to the use, in the subsequent action, of any material resulting from any discovery already conducted in this case.

(4) The defendant has until June 5, 2009 to make a detailed showing to this court of the expenses, including reasonable attorneys' fees, that it believes would be duplicative if it is added as a party to the state court litigation; the plaintiff shall have until June 19, 2009 to respond to that showing; and the court will determine the amount as promptly as possible thereafter. Upon adding defendant to the state court action, plaintiff shall be required to pay to the defendant the expenses this court finds would be duplicative. Failure to pay the amount set forth by the court within twenty days after refiling this action will convert this dismissal into a dismissal with prejudice. The court will retain jurisdiction over this matter to entertain a motion by the defendants to so convert such a dismissal.

**IT IS SO ORDERED** this 27th day of May, 2009.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge