**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

|  |  |
|---|---|
| **JOE M. LIENEMANN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No. 08-2484** |
| ) | |
| **GLOCK, INC.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM AND ORDER**

Plaintiff Joe M. Lienemann sought and received permission from this court to voluntarily dismiss this case against his former employer, Defendant Glock, Inc. (doc. 52). As a condition of the dismissal and subsequent refiling in state court, Mr. Lienemann was ordered to pay duplicative expenses Glock incurred defending this action. Glock has filed a memorandum and affidavits in support of its request for $18,139.00 in duplicative costs and fees (docs. 55, 57, & 61). Mr. Lienemann has replied to Glock's request (docs. 58 & 63). For the reasons discussed below, the court awards Glock $7,526.00 in duplicative expenses to be reimbursed by Mr. Lienemann upon refiling of the action in state court.

As noted in this court's previous order, typically a court imposes as a condition of dismissal without prejudice that the plaintiff pay the defendant's expenses incurred in defending the lawsuit, which usually include reasonable attorney's fees. *United States*

*v. Rockwell Int'l Corp.*, 265 F.3d 1157, 1179 (10th Cir. 2001); *see also Cauley v. Wilson*, 754 F.2d 769, 771-72 (7th Cir. 1985). "The purpose of awarding attorney's fees on a voluntary dismissal without prejudice is to compensate the defendant for the unnecessary expense that the litigation has caused." *Cauley*, 754 F.2d at 772. In a dismissal without prejudice, the defendant may be forced to again defend the action and incur duplicative expenses. *Id.* Thus, "[w]here a subsequent similar suit between the parties is contemplated, expenses awarded might be limited to those incurred in discovering information and researching and pressing legal arguments that will not be useful in the later suit." *McCants v. Ford Motor Co.*, 781 F.2d 855, 860 (11th Cir. 1986); *see also Koch v. Hankins*, 8 F.3d 650, 652 (9th Cir. 1993); *Cauley*, 754 F.2d at 772; *McLaughlin v. Cheshire*, 676 F.2d 855, 857 (D.C. Cir. 1982).

Conversely, a plaintiff does not need to reimburse costs incurred by a defendant that will be useful in the subsequent litigation or that were incurred unnecessarily. *Cauley*, 754 F.2d at 773; *Gonzalez v. City of Topeka Kan.*, 206 F.R.D. 280, (D. Kan. Nov. 13, 2001) ("In ordering the payment of costs as a condition, the court cannot include those expenses for items that will be useful in another action or that were incurred unnecessarily." (internal quotation and citation omitted)). Thus, Glock must identify costs and expenses incurred from activities relating solely to this action and which will not be useful in defending itself in an upcoming state court proceeding. *His Grace the Duke of Westminster v. Cessna Aircraft Co.*, No. 02-2054, 2003 WL 22843178, at *1 (D. Kan. Nov. 6, 2003).

1.   Sufficient Documentation

Mr. Lienemann first opposes Glock's motion on the basis of insufficient documentation, arguing that the affidavit initially submitted by attorney Christopher Renzulli failed to include any detailed itemization of the fees listed. Mr. Renzulli later supplemented his affidavit with billing entries and expense statements that clearly identify time spent by various law firm employees on each task. This supplement is sufficient to satisfy Glock's burden of documenting its fees and expenses. *See, e.g.*, *Cauley*, 754 F.2d at 772 (requiring defendant's attorney to submit documentary evidence such as billing statements and time sheets); *Conley v. Dickinson*, No. 06-4017, 2007 WL 1805025, at *3 (D. Kan. June 20, 2007) (noting that defendants properly supported their motion with "affidavits and copies of itemized, detailed and contemporaneously record time sheets").

2.   Pleadings

Glock seeks reimbursement for $1,651.50 incurred in reviewing Mr. Lienemann's complaint and then drafting, filing, and serving its answer. Additionally, Glock incurred fees and expenses totaling $560.50 in drafting, filing, and serving three applications for admission pro hac vice so that its national counsel could represent it here in this court.

Given Mr. Lienemann's assertion that the petition to be filed in state court will be identical to the one in this action, much of the legal research done here will be useful in the state court proceeding. *Cauley*, 754 F.2d at 772-73. Additionally, many of the documents could be used in state court with some minor formatting or caption changes.

3

*See, e.g.*, *Conley*, 2007 WL 1805025, at *3.

According to the billing sheets, the attorneys who worked on these documents charged $190 and $195 per hour and the paralegal who assisted billed at $95 per hour. Because the state court case will mirror this one in substantive form, the court estimates that no more than two hours of attorney time and two hours of paralegal time will be duplicated in modifying these documents for state court. Using an average hourly rate of $192.50 for attorneys and the $95 hourly rate for a paralegal, the court will award Glock **$575.00** in duplicative fees.

3.      Scheduling

Glock asks for $2,255.50 in fees and expenses for scheduling the current litigation, including conferring with Mr. Lienemann's attorneys prior to the Rule 16 conference, drafting and revising the parties' report, and attending the Rule 16 case management conference. Generally, time spent preparing for and attending a scheduling conference will not be useful in a later action. *His Grace*, 2003 WL 22843178, at *2. Mr. Lienemann, however, asserts that the time Glock spent on this task is excessive.

Although Glock's memo requests $2,255.50, the affidavits cited in support (Mr. Renzulli's original affidavit and the billing statements attached to the affidavit submitted by local counsel) do not support that request. The billing sheets from local counsel include only one-half hour spent reviewing the planning and scheduling order, which would account for $97.50 in fees. Mr. Renzulli's initial affidavit avers that he spent four

hours in connection with planning and scheduling, which would come to $1,060.[1] The Affidavit in Reply filed by Mr. Renzulli (doc. 61) asserts that Glock actually incurred $250 more in fees than he originally mentioned in his first affidavit. According to the billing statement attached to Mr. Renzulli's Affidavit in Reply (doc. 61), only one other attorney in his firm worked on scheduling matters, and he incurred fees of $379.50 by attending the Rule 16 conference with the judge. These numbers total approximately $1,800.00, and it remains unclear where the $2,255.50 figure mentioned in Glock's request for costs came from.

The court will award local counsel fees for scheduling preparation and the four hours Mr. Renzulli noted in his original affidavit. Although a second attorney from Mr. Renzulli's firm attended the scheduling conference, his presence was unnecessary given Mr. Renzulli's attendance.

Thus, the court awards Glock **$1,157.50** for scheduling fees.

4.    Rule 26 documents

Glock incurred $820.00 in costs and fees in drafting initial disclosures to comply with this court's Rule 26 requirements. Glock also asks for $740.00 to reimburse it for time and expense drafting supplemental disclosures and preliminary witness and exhibit

---

[1] Mr. Renzulli's affidavit asserts that his four hours of work caused Glock to incur $1,144 in fees. Renzulli Aff. ¶ 7. But earlier in his affidavit, he sets out his hourly billing rate at $265 per hour through the end of 2008, and $285 per hour after January 1, 2009. *Id.* ¶ 3. All of the scheduling events occurred in 2008, when his billing rate was $265. Thus, the total for four hours of work would be $1,060 and not $1,144.

lists. Fees incurred in complying with court-specific requirements are duplicative and will not be useful in a state court action. *His Grace*, 2003 WL 22843178, at *2. But the tasks of gathering the information, identifying persons with discoverable information, and formulating the actual witness and exhibits lists will be useful in the next case. Thus, the court will only award Glock two hours of attorney time at $165 per hour (the rate of the primary attorney who worked on the Rule 26 disclosures) to compensate for the time spent arranging the information into the form required by federal courts. Thus, the court awards Glock **$330.00**.

5.      Settlement, Comparative Fault, and Mediation

Glock incurred expenses and fees in the amount of $2,138.00 by "reviewing plaintiff's settlement proposal, drafting and serving a counter settlement proposal, communications with the client regarding these proposals, as well as drafting and filing a confidential settlement report." This dollar figure also includes time identifying the party whose fault Glock wished to compare, and drafting and filing that report. Glock also incurred $3,638.50 by participating in court-ordered mediation, which it asserts it will do again in the state court proceeding.

As discussed earlier, any portion of these amounts that represent discovery or legal analysis will be useful in the state court action. Additionally, the comparative fault analysis, although it is a court-ordered requirement, can also be used in state court.

As for the actual settlement negotiations and mediation meetings, Mr. Lienemann suggests that any attempt to resolve the litigation is useful. The court agrees. To a

certain extent, any communications between the parties about their respective claims and positions will influence the continuation of the lawsuit and any future settlement or mediation conversations. That said, compliance with court-specific procedures, including filing a settlement report or attending court-ordered mediation, is duplicative and not useful in the future action. *His Grace*, 2003 WL 22843178, at *2.

As for the settlement process, the court will award two hours of attorney time for preparation of court-required reports, billed at an average rate of $225 per hour (Mr. Renzulli's rate is $285 and the other attorney who worked on the settlement documents billed at a rate of $165). Additionally, the court will award one hour of attorney time at $165 per hour for revising and reformatting the comparative fault information as needed. And after reviewing the billing statements regarding mediation, it appears that Glock's request of $3,638.50 is reasonable given the time its attorneys logged traveling to and attending the mediation and drafting court-required reports.

Mr. Renzulli filed a Supplemental Affidavit (doc. 56) asking that Glock be reimbursed for $1,079.26 travel costs incurred so that an agent with settlement authority could be present in Kansas City during the mediation. These costs, however, were unnecessary given that Glock's agent could have been available by telephone to consent to any proposed settlement.

For these reasons, the court will award Glock **$4,253.50** in fees and expenses associated with settlement, comparative fault, and mediation.

6.      Motion to Dismiss

Glock asks for $6,335.00, which constitutes only a portion of the fees and expenses it incurred in connection with Mr. Lienemann's motion to dismiss—"review and analysis of plaintiff's motion, conducting legal research, drafting and filing a request for deferred ruling and an opposition, and preparing [a] memorandum to recover expenses and fees." Typically, a defendant is entitled to recover costs associated with the voluntary dismissal motion. *Conley*, 2007 WL 1805025, at *2.

Mr. Lienemann challenges this request as excessive, claiming that he agreed with many of the conditions Glock sought but that Glock's attorneys never bothered to call and ask. Moreover, Mr. Lienemann claims that only a small portion of the opposition to dismissal includes legal analysis.

The court is inclined to agree. Although Glock tendered a seventeen-page memorandum in opposition to Mr. Lienemann's motion to dismiss, most of the arguments it raised were fruitless. The Tenth Circuit has instructed that although a district court has discretion over voluntary dismissal, a court should normally grant such motions unless it finds legal prejudice. *Ohlander v. Larson*, 114 F.3d 1531, 1537 (10th Cir. 1997); *see also Brown v. Baeke*, 413 F.3d 1121, 1123 (10th Cir. 2005). As noted in this court's previous order,

> "Prejudice does not arise simply because a second action has been or may be filed against the defendant, *Am. Nat'l Bank & Trust Co.*, 931 F.2d at 1412, which is often the whole point in dismissing a case without prejudice." *Brown*, 413 F.3d at 1124. Rather, prejudice is a function of other, practical factors including: "the opposing party's effort and expense in preparing for trial; excessive delay and lack of diligence on the part of the movant; insufficient explanation of the need for a dismissal; and the

8

present stage of litigation." *Id.* (citing *Ohlander*, 114 F.3d at 1537).

*Lienemann v. Glock*, No. 08-2484, 2009 WL 1505542, at *2 (D. Kan. May 27, 2009). Glock spent much of its opposition recounting the facts and the procedural history of the case. And it devoted substantial legal research to the possibility of inconsistent verdicts in a defamation case. Mr. Lienemann's motion, however, explained that he wished to add another defendant to the action and that defendant would destroy diversity. This potential lack of diversity when joining all defendants is a valid consideration for a voluntary motion to dismiss. *McCoy v. Whirlpool Corp.*, 204 F.R.D. 471, 474 (D. Kan. 2001).

Thus, the only real issue Glock should have addressed was which conditions this court should place on the dismissal. And, as Mr. Lienemann notes, he agreed to all conditions except the imposition of duplicative fees.

The court finds that the majority of Glock's fees associated with opposing the motion to dismiss were incurred unnecessarily. Glock sought reimbursement for three partner hours at $285 per hour and twenty-five associate hours at $185 per hour. The court concludes that all but one partner hour and five associate hours were excessive and merely served to raise meritless and unnecessary arguments, when instead Glock's opposition should have focused on which conditions the court should impose on the dismissal. Thus, the court awards Glock **$1,210.00**.

7.      Total

The court concludes that **$7,526.00** of the fees and expenses incurred by Glock

9

will be duplicative if and when Mr. Lienemann refiles this action in state court.

**IT IS THEREFORE ORDERED BY THE COURT** that upon adding defendant to the state court action, plaintiff shall be required to pay to the defendant $7,526.00. Failure to pay the amount set forth by the court within twenty days after refiling this action will convert this dismissal into a dismissal with prejudice.

**IT IS SO ORDERED** this 16th day of July, 2009.

           s/ John W. Lungstrum
           John W. Lungstrum
           United States District Judge